**BLEICHMAR FONTI & AULD LLP**
Lesley E. Weaver (Bar No. 191305)
lweaver@bfalaw.com
1330 Broadway, Suite 630
Oakland, California 94612
Telephone: (415) 445-4003
Facsimile: (415) 445-4020

*Counsel for Proposed Lead Plaintiff*
*Brian Paplaski and Proposed*
*Lead Counsel for the Class*

[*Additional Counsel on Signature Page*]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| KARTHIK TRICHUR SUNDARAM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IOVANCE BIOTHERAPEUTICS, INC., FREDERICK G. VOGT, JEAN-MARC BELLEMIN, IGOR P. BILINSKY, and DANIEL G. KIRBY,<br><br>Defendants. | Case No. 5:25-cv-04177-EKL-NMC<br><br><u>CLASS ACTION</u><br><br>**NOTICE OF MOTION AND MOTION OF BRIAN PAPLASKI FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF HIS SELECTION OF LEAD COUNSEL, AND CONSOLIDATION OF THE RELATED ACTIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: October 1, 2025<br>Time: 10:00 a.m.<br>Courtroom: 7—4th Floor<br>Judge: Hon. Eumi K. Lee |
| DIMITRY FARBEROV, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IOVANCE BIOTHERAPEUTICS, INC., FREDERICK G. VOGT, JEAN-MARC BELLEMIN, and IGOR P. BILINSKY,<br><br>Defendants. | Case No. 3:25-cv-04199-EKL-NMC<br><br><u>CLASS ACTION</u> |

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
CASE NO. 5:25-CV-04177-EKL-NMC

## NOTICE OF MOTION AND MOTION

TO:    ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that at 10:00 a.m. on October 1, 2025, or on a date and at a time set by the Court, before the Honorable Eumi K. Lee, at the United States District Court for the Northern District of California, located at the San Jose Courthouse, Courtroom 7, 4th Floor, 280 South First Street, San Jose, California 95113, Brian Paplaski, through his counsel, will respectfully move the Court for entry of an Order: (1) appointing Mr. Paplaski as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B); (2) approving his selection of Bleichmar Fonti & Auld LLP ("BFA") to serve as Lead Counsel for the Class; (3) consolidating the above-captioned securities class actions (the "Related Actions") pursuant to Rule 42(a) of the Federal Rules of Civil Procedure; and (4) granting any such other and further relief as the Court may deem just and proper.

This Motion is made on the grounds that Mr. Paplaski believes he is the "most adequate plaintiff" under the PSLRA, and therefore should be appointed Lead Plaintiff. Specifically, Mr. Paplaski believes that he has the "largest financial interest" in the relief sought by the Class by virtue of, among other things, the roughly $715,000 in losses he incurred on his investments in Iovance Biotherapeutics, Inc. ("Iovance" or the "Company") securities. Mr. Paplaski also otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") because his claims are typical of other members of the Class and because he will fairly and adequately represent the Class.

This Motion is based upon the accompanying Memorandum of Points and Authorities in support thereof, the Declaration of Lesley E. Weaver ("Weaver Decl.") filed herewith, the pleadings and other filings herein, and any such other written or oral argument as the Court may permit.

WHEREFORE, Mr. Paplaski respectfully requests that the Court: (1) appoint him as Lead Plaintiff; (2) approve his selection of BFA to serve as Lead Counsel for the Class; (3) consolidate the Related Actions; and (4) grant any such other relief as the Court may deem just and proper.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   STATEMENT OF THE ISSUES TO BE DECIDED

1.   Whether the Court should appoint Mr. Paplaski as Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B).

2.   Whether the Court should approve Mr. Paplaski's selection of BFA to serve as Lead Counsel for the Class, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

3.   Whether the Court should consolidate the above-captioned actions pursuant to Rule 42(a).

## II.   PRELIMINARY STATEMENT

There are two Related Actions pending in this District.  The Related Actions allege that Iovance and certain of its senior officers (collectively, "Defendants") defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).  Specifically, the Related Actions allege that from May 9, 2024 through May 8, 2025 (the "Class Period"), Defendants misrepresented the Company's ability to capitalize on purported existing demand for Amtagvi, a treatment for adult patients with unresectable or metastatic melanoma, through its growing network of authorized treatment centers ("ATCs").

The complaints in the Related Actions assert different class periods.  The complaint in *Sundaram v. Iovance Biotherapeutics, Inc.*, No. 5:25-cv-04177 (N.D. Cal.) ("*Sundaram*"), asserts a class period of August 8, 2024 through May 8, 2025 while the complaint filed in *Farberov v. Iovance Biotherapeutics, Inc.*, No. 3:25-cv-04199 (N.D. Cal.) ("*Farberov*")*,* asserts a broader class period of May 9, 2024 through May 8, 2025.  For purposes of appointing a Lead Plaintiff, the longest alleged class period governs.  *See, e.g.*, *Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, 2014 WL 2604991, at *1 n.3 (N.D. Cal. June 10, 2014).

The PSLRA states that the Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  In that regard, the Court is to determine which movant has the "largest financial interest" in the relief sought by the class in this litigation and whether that movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23.  15

U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Mr. Paplaski respectfully submits that he is the "most adequate plaintiff" by virtue of, among other things, the roughly $715,000 in losses he incurred on his investments in Iovance securities during the Class Period.  Mr. Paplaski also satisfies the relevant requirements of Rule 23 because his claims are typical of all members of the Class, and he will fairly and adequately represent the Class.  Indeed, Mr. Paplaski fully understands the Lead Plaintiff's obligations to the Class under the PSLRA and is willing and able to undertake the responsibilities entailed in acting as a Lead Plaintiff to guarantee vigorous prosecution of this action.  See Weaver Decl. Ex. A.

Mr. Paplaski has further demonstrated his adequacy by selecting BFA, a law firm with substantial experience in successfully prosecuting complex securities class actions, to serve as Lead Counsel for the Class.  Accordingly, Mr. Paplaski respectfully requests that the Court appoint him as Lead Plaintiff and otherwise grant his motion.

## III.    FACTUAL BACKGROUND

Iovance is a biopharmaceutical company that commercializes cell therapies for the treatment of metastatic melanoma and other solid tumor cancers.  ¶17.  All citations to ¶__ refer to the complaint filed in *Farberov*.  *See* ECF No. 1.  The Company's top priority is the commercialization of Amtagvi (lifileucel), a tumor derived autologous T cell immunotherapy used to treat adult patients with unresectable or metastatic melanoma.  ¶17.  The Company commercially launched Amtagvi in February 2024 and administers Amtagvi at the Company's ATCs.  *Id.*

This case concerns Defendants' misrepresentations about the Company's ability to capitalize on purported existing demand for Amtagvi through its growing network of ATCs.  On November 7, 2024, CEO Vogt stated that "[r]obust demand" for Amtagvi "continues to grow" due to the Company's "expanding network" of ATCs and "outreach to community oncologists [which] broaden the utilization of Amtagvi, driving a higher volume of patient referrals."  ¶22.  CEO Vogt further represented that "[d]emand trends are expected to accelerate growth throughout the remainder of the year and over the following years."  *Id.*  Also on November 7, 2024, the Company stated that patient onboarding was "complete at 56 U.S. ATCs across 29 states and more than 90% of addressable patients are now located within 200 miles of an ATC."  *Id.*

As alleged, these statements were materially false and misleading.  In truth, the new ATCs were experiencing longer timelines to begin treating patients with Amtagvi.  ¶26.  Also, the Company's sales team and new ATCs were ineffective in patient identification and patient selection for Amtagvi, leading to higher patient drop-offs.  *Id.*

Investors began to learn the truth on May 8, 2025, when Iovance reported its Q1 2025 financial results, revealing a significant decline in quarterly total product revenue of $49.3 million, from $73.7 million in the prior quarter.  ¶27.  The Company also cut fiscal 2025 total product revenue guidance to $250 million - $300 million, from $450 million - $475 million, a reduction of over 40% at the midpoint.  *Id.*  Iovance attributed the poor results to "recent launch dynamics," including slow "treatment timelines for new ATCs" and "the variable pace at which ATCs began treating patients," which "differs from center to center."  ¶¶27-28.  Iovance also blamed the results on high patient drop-off due to inadequate "patient selection" for treatment.  ¶29.  On this news, the price of Iovance stock declined $1.42 per share, or 44.8%, to close at $1.75 per share on May 9, 2025.  ¶30.

Pursuant to Civil Local Rule 3-7(c), Mr. Paplaski certifies that he has reviewed and adopts the allegations in the complaints filed in the above-captioned cases for purposes of this motion.  If appointed Lead Plaintiff, Mr. Paplaski reserves his right to file an amended complaint asserting other or different allegations.

## IV.    ARGUMENT

### A.    Mr. Paplaski Should Be Appointed Lead Plaintiff

Mr. Paplaski respectfully submits that he should be appointed Lead Plaintiff because he is the movant "most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  When selecting a Lead Plaintiff, the PSLRA establishes a presumption that the "most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) ("The [PSLRA] provides a simple . . . process for identifying the lead plaintiff pursuant to these criteria").  Here, Mr. Paplaski believes that he is the presumptively "most adequate plaintiff" because he: (1) complied with the PSLRA's procedural

requirements; (2) believes he asserts the largest financial interest in the relief sought by the Class; and (3) satisfies Rule 23's typicality and adequacy requirements.

### 1. Mr. Paplaski Satisfied The PSLRA's Procedural Requirements

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days after publication of notice of the pendency of the action. *See* 15 U.S.C. § 78u-4(a)(3)(A). On May 15, 2025, Plaintiff Karthik Trichur Sundaram filed the first of the Related Actions which alleged that Defendants defrauded investors during the period of August 8, 2024 through May 8, 2025. On the same day, counsel for Mr. Sundaram published notice of the pendency of the action on *Globe Newswire*, setting the deadline to seek Lead Plaintiff status by July 14, 2025. *See* Weaver Decl. Ex. B.

Also on May 15, 2025, Plaintiff Dimitry Farberov filed the second of the Related Actions which alleged that Defendants defrauded investors during a broader period of May 9, 2024 through May 8, 2025. On May 16, 2025, counsel for Mr. Farberov published a notice on *Business Wire* alerting investors to the broader Class Period. *See* Weaver Decl. Ex. C. As such, Mr. Paplaski's motion is timely.

### 2. Mr. Paplaski Believes He Has The Largest Financial Interest In The Relief Sought By The Class

Mr. Paplaski believes that he has the "largest financial interest in the relief sought by the class" and thus should be appointed Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Mr. Paplaski incurred a loss of approximately $715,000 on his investments in Iovance securities during the Class Period.

In addition to losses, courts often consider various other metrics, including what are typically referred to as "*Lax* factors," to further analyze a movant's financial interest when warranted. *See Lax v. First Merchs. Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997) (identifying (1) total number of shares purchased; (2) number of net shares purchased; (3) total net funds expended; and (4) approximate losses suffered, as four factors for courts to consider when determining the largest financial interest). Mr. Paplaski's PSLRA certifications and loss calculations provide the necessary trading information to calculate his financial interest under all possible metrics, and does not presuppose that there is only one valid methodology. *See* Weaver Decl. Exs. D-E.

To the best of Mr. Paplaski's knowledge, there is no other applicant seeking Lead Plaintiff appointment that has a larger financial interest in this litigation. Accordingly, Mr. Paplaski believes that he has the largest financial interest of any qualified movant seeking Lead Plaintiff status and is the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### 3. Mr. Paplaski Otherwise Satisfies The Requirements Of Rule 23

In addition to possessing the largest financial interest in the relief sought by the Class, Mr. Paplaski also otherwise satisfies the requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). On a motion to serve as Lead Plaintiff, a movant need only make a "preliminary showing that it satisfies the typicality and adequacy requirements of [Rule] 23." *Krieger v. Atheros Commc'ns, Inc.*, 2011 WL 6153154, at *3 (N.D. Cal. Dec. 12, 2011) (citation omitted). Mr. Paplaski satisfies both requirements.

Mr. Paplaski's claims are typical of the claims of other purchasers of Iovance securities. When "determining whether typicality is satisfied, a Court inquires 'whether other members [of the Class] have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 2013 WL 2368059, at *4 (N.D. Cal. May 29, 2013) (citation omitted). Here, Mr. Paplaski sustained injuries virtually identical to other Class members and his claims are based on the same course of conduct because, like all other Class members, Mr. Paplaski: (1) purchased Iovance securities during the Class Period; (2) purchased at prices artificially inflated by Defendants' materially false and misleading statements and omissions; and (3) was damaged thereby. *See id.* As such, Mr. Paplaski satisfies the typicality requirement.

Mr. Paplaski also satisfies the adequacy requirement of Rule 23. The adequacy inquiry focuses on whether the representative party will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The test for adequacy asks whether the class representative and his counsel 'have any conflicts of interest with other class members' and whether the class representative and his counsel will 'prosecute the action vigorously on behalf of the class.'" *Align*, 2013 WL 2368059, at *4 (citation omitted). Mr. Paplaski satisfies these elements because his substantial financial stake in the litigation provides him with the incentive to vigorously represent the Class's claims and oversee counsel. Further,

Mr. Paplaski's interests are aligned with those of other putative class members and are not antagonistic in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between Mr. Paplaski and the other purported Class members.

Indeed, Mr. Paplaski is committed to discharge his obligations as Lead Plaintiff under the PSLRA to oversee and supervise the litigation separate and apart from counsel, and submitted a sworn declaration as to his willingness and ability to fulfill those duties. *See* Weaver Decl. Ex. A. What's more, Mr. Paplaski's Declaration provides the Court with additional information supporting his bona fides, including explaining who he is, that he is an experienced investor with over 15 years of investment experience, that he is an experienced Chief Financial Officer, and given his substantial financial interest in the litigation, that he intends to continue to actively oversee counsel, confer with counsel regarding litigation strategy, attend important court proceedings, hearings, depositions and mediations, and review and authorize the filing of important litigation documents. *See id.* ¶¶2–8.

Finally, Mr. Paplaski has demonstrated his adequacy through his selection of BFA as Lead Counsel to represent the Class in this action. As discussed more fully below, BFA is highly qualified and experienced in the area of securities class actions and has repeatedly demonstrated an ability to conduct complex securities actions effectively.

**B.        Mr. Paplaski Selected Well-Qualified Counsel To Represent The Class**

Under the PSLRA, the Lead Plaintiff is given the right, "subject to the approval of the court," to "select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." *Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009).

BFA is among the foremost securities class action law firms in the country. BFA's partners have served as Lead and Co-Lead Counsel on behalf of dozens of investors in securities class actions and have secured significant recoveries on behalf of investors in some of the most prominent fraud cases in recent decades. *See* Weaver Decl. Ex. F. For example, BFA recently achieved a $420 million resolution on behalf of investors in *Ontario Teachers' Pension Plan Board v. Teva Pharmaceutical Industries Ltd.*, No. 3:17-cv-00558-SRU (D. Conn.). BFA also recently secured a $129 million resolution in this District

on behalf of investors in *The Police Retirement System of St. Louis v. Granite Construction Inc.*, No. 3:19-cv-04744-WHA (N.D. Cal.).  Previously, BFA secured a $234 million resolution for the benefit of the class in *In re MF Global Holdings Ltd. Securities Litigation*, No. 1:11-cv-07866-VM (S.D.N.Y.), as well as a $120 million recovery in *Freedman v. Weatherford International Ltd.*, No. 1:12-cv-02121-LAK (S.D.N.Y.).  BFA also secured a $219 million resolution in *In re Genworth Financial, Inc. Securities Litigation*, 3:14-cv-00682-JAG (E.D. Va.), which represents the largest securities class action recovery ever achieved in the Eastern District of Virginia.  Thus, the Court may be assured that by granting this motion, the proposed Class will receive the highest caliber of legal representation.

### C.     The Related Actions Should Be Consolidated

Federal Rule of Civil Procedure 42(a) allows the Court to consolidate actions that "involve a common question of law or fact."  There are two Related Actions pending against Iovance in this District:

| Case | Civil No. | Date Filed |
|---|---|---|
| *Sundaram v. Iovance Biotherapeutics, Inc.* | 5:25-cv-04177 | May 15, 2025 |
| *Farberov v. Iovance Biotherapeutics, Inc.* | 3:25-cv-04199 | May 15, 2025 |

The Related Actions present substantially similar factual and legal issues because they allege the same legal claims against overlapping defendants, arise out of a substantially similar course of conduct during overlapping periods of time, and allege similar types of misrepresentations.  While the Related Actions assert different class periods, that minor difference does not outweigh the benefits of judicial economy that would be created from consolidation.  Accordingly, consolidation of these actions, and any similarly related subsequently filed or transferred actions, is appropriate under Rule 42.  *See Moradpour v. Velodyne Lidar, Inc.*, 2021 WL 2778533, at *2 (N.D. Cal. July 2, 2021) (consolidating three securities class actions because "[a]ll three actions arise from the same factual scenario—namely, whether [the company's] securities were artificially inflated during the class period as a result of defendant's alleged conduct and public statements").

### V.     CONCLUSION

For the foregoing reasons, Mr. Paplaski respectfully requests that the Court appoint him as Lead Plaintiff, approve his selection of BFA as Lead Counsel for the Class, consolidate the Related Actions, and grant such other relief as the Court may deem just and proper.

DATED: July 14, 2025

Respectfully Submitted,

**BLEICHMAR FONTI & AULD LLP**

_/s/ Lesley E. Weaver_
Lesley E. Weaver (Bar No. 191305)
lweaver@bfalaw.com
Adam C. McCall (Bar No. 302130)
amccall@bfalaw.com
1330 Broadway, Suite 630
Oakland, California 94612
Telephone: (415) 445-4003
Facsimile: (415) 445-4020

-and-

Javier Bleichmar (_pro hac vice_ forthcoming)
jbleichmar@bfalaw.com
300 Park Avenue, Suite 1301
New York, New York 10022
Telephone: (212) 789-1340
Facsimile: (212) 205-3960

-and-

Ross Shikowitz (_pro hac vice_ forthcoming)
rshikowitz@bfalaw.com
75 Virginia Road
White Plains, New York 10603
Telephone: (914) 265-2991
Facsimile: (212) 205-3960

_Counsel for Proposed Lead Plaintiff Brian Paplaski, and Proposed Lead Counsel for the Class_

**CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the court's CM/ECF system.

*/s/ Lesley E. Weaver*
Lesley E. Weaver