POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Lead Plaintiff Movant*
*Anthony Westfall and Proposed Lead*
*Counsel for the Class*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| KARTHIK TRICHUR SUNDARAM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IOVANCE BIOTHERAPEUTICS, INC., FREDERICK G. VOGT, JEAN-MARC BELLEMIN, IGOR P. BILINSKY, and DANIEL G. KIRBY,<br><br>Defendants. | Case No.: 5:25-cv-04177-EKL<br><br>MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF ANTHONY WESTFALL FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS<br><br><u>CLASS ACTION</u><br><br>Date:  September 3, 2025<br>Time:  10:00 a.m.<br>Judge:  Hon. Eumi K. Lee<br>Courtroom:  7 – 4th Floor |
| DIMITRY FARBEROV, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IOVANCE BIOTHERAPEUTICS, INC., FREDERICK G. VOGT, JEAN-MARC BELLEMIN, and IGOR P. BILINSKY,<br><br>Defendants. | Case No.: 5:25-cv-04199-EKL<br><br><u>CLASS ACTION</u> |

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF ANTHONY WESTFALL FOR
CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL; AND (2) IN
OPPOSITION TO COMPETING MOTIONS - 5:25-cv-04177-EKL; 5:25-cv-04199-EKL

Movant Westfall[1] respectfully submits this memorandum of law in further support of his motion for appointment as Lead Plaintiff and approval of his selection of Pomerantz as Lead Counsel (Dkt. No. 46); and in opposition to the competing motions of (i) Lindy Merrill and Tony Djie (together, "Merrill and Djie") (Dkt. No. 24); (ii) Dimitry Farberov, JianJun Wei, and Hassan Pourhossein (collectively, "Farberov, Wei, and Pourhossein") (Dkt. No. 35); and (iii) Mehdi Hasan ("Hasan") (Dkt. No. 39).[2]

## I.     PRELIMINARY STATEMENT

The Related Actions are putative securities class action lawsuits on behalf of investors in Iovance securities.  As with all federal class action securities lawsuits, a lead plaintiff must be appointed.  The PSLRA governs that process and, pursuant to the PSLRA, the Court must appoint as Lead Plaintiff the movant with the greatest financial interest in the outcome of the action ***and*** who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Here, the only movant to satisfy the PSLRA's appointment criteria is Westfall.  First, Westfall possesses the largest financial interest among the eligible candidates for appointment as Lead Plaintiff because he incurred a loss of approximately $1,264,855 in connection with his Class Period purchases of Iovance securities, more than any eligible competing movant.

---

[1] All capitalized terms herein are defined in the Westfall's moving brief, unless otherwise indicated.  *See* Dkt. No. 46.

[2] Initially, six other movants also filed competing motions seeking appointment as lead plaintiff: (i) Gary LoPiccolo ("LoPiccolo") (Dkt. No. 18); (ii) Thor Brevik and Elliot Resnick ("Brevik and Resnick") (Dkt. No. 28); (iii) Lee Schweizer, Michael A. Macchione, Ann Marie Macchione, Bradford J. Tierney, and Christopher J. Amoruso (collectively, the "Iova Investor Group") (Dkt. No. 30); (iv) Mark van den Broek ("van den Broek") (Dkt. No. 15); (v) Brian Paplaski ("Paplaski") (Dkt. No. 45); and (vi) Peter Jay Guthy ("Guthy") (Dkt. No. 21).  On July 18, 2025, LoPiccolo filed a statement of non-opposition to competing motions.  Dkt. No. 55.  On July 22, 2025, Brevik and Resnick filed a notice withdrawing their motion.  Dkt. No. 57.  On July 28, 2025, the Iova Investor Group and van den Broek each filed notices of non-opposition to competing motions (*see* Dkt. Nos. 63; 64), Paplaski filed a response acknowledging that he does not possess the largest financial interest in this litigation (*see* Dkt. No. 65), and Guthy filed a notice withdrawing his motion (Dkt. No. 66).

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF ANTHONY WESTFALL FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 5:25-cv-04177-EKL; 5:25-cv-04199-EKL

The table below sets forth Westfall's losses compared to those claimed by the competing movants:

| Movant | Loss |
| --- | --- |
| Westfall | $1,264,855 |
| Farberov, Wei, and Pourhossein | $1,198,550 |
| Hasan | $521,266 |
| ~~Merrill and Djie~~ | ~~$5,199,667~~ |

Having incurred a loss of $1,264,855, Westfall has the greatest financial interest within the meaning of the PSLRA of any putative Class member eligible for appointment as Lead Plaintiff. *See Nicolow v. Hewlett Packard Co.*, Nos. 12-05980 CRB *et al.*, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) (emphasizing monetary loss in assessing financial interest). One competing movant duo, Merrill and Djie, claim to have incurred a larger loss than Westfall. However, as discussed below, Merrill and Djie fail to satisfy the adequacy requirements of Rule 23 and are therefore disqualified from consideration as Lead Plaintiff.

In addition to his significant financial interest, Westfall also satisfies the adequacy and typicality requirements of Rule 23. Westfall is aware of no conflict between his interests and those of the Class, his losses incurred as a result of the Defendants' alleged malfeasance gives him a sufficient stake in the outcome of the Action to ensure vigorous advocacy, and in Pomerantz, Westfall has retained qualified and experienced counsel. *See*, *e.g.*, *Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007). Moreover, Westfall's claims in this litigation are based on the same legal theory and arise from the same events and course of conduct as the claims of the other Class members. *See*, *e.g.*, *Vataj v. Johnson*, 19-CV-06996-HSG, 2020 WL 532981, at *3 (N.D. Cal. Feb. 3, 2020). Further demonstrating his adequacy, Westfall has submitted a detailed Declaration providing the Court with biographical information about himself and attesting to, *inter alia*, his understanding of the significance of his motion, the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, and his readiness to shoulder these responsibilities on behalf of the Class. *See generally* Dkt. No. 46-6.

By contrast, Merrill and Djie are inadequate within the meaning of Rule 23. First, Merrill and Djie are inadequate because their motion papers contain disqualifying errors. Specifically, Merrill and Djie improperly included pre-Class Period purchases of Iovance securities in the calculation of Djie's financial interest in this litigation, causing Merrill and Djie to overstate their investment losses by approximately *$422,800*. Moreover, Merrill and Djie failed to disclose all of Djie's Class Period transactions in Iovance securities as required by the PSLRA. Although Merrill and Djie subsequently filed a Notice of Errata correcting these errors (Dkt. No. 56), they failed to correct an additional error: namely, that Merrill and Djie incorrectly accounted for certain of Merrill's post-Class Period sales, causing them to overstate their investment losses by approximately $13,189. Courts routinely deny lead plaintiff motions under such circumstances because they raise questions regarding the movant's fitness to supervise complex securities class actions. *See*, *e.g.*, *Camp v. Qualcomm Inc.*, 18-CV-1208-AJB-BLM, 2019 WL 277360, at *3-4 (S.D. Cal. Jan. 22, 2019) (significant errors in transactions records and loss calculations prohibit a movant from satisfying the adequacy and typicality requirements of Rule 23); *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 414 (E.D. Pa. 2019) (disqualifying movant with the largest loss when errors in sworn certification demonstrated a "substantial degree of carelessness and raise[d] doubt as to whether he will fairly and adequately represent the best interests of the class").

Second, Merrill and Djie are also inadequate because they are an improper movant group cobbled together by their attorneys for the sole purpose of securing the PSLRA's largest financial interest presumption. Moreover, Merrill and Djie provided only sparse information about themselves and failed to submit a joint declaration or otherwise demonstrate to the Court at all that they understand the responsibilities of a Lead Plaintiff and are prepared to undertake them jointly. Courts in the Ninth Circuit generally decline to appoint investor groups as co-lead plaintiffs when they consist of individuals "who had no pre-existing relationship with one another, and whose relationship and group status were forged only by [its] lawyer[s]." *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 835 (N.D. Cal. 2019) (denying motion by artificial grouping

of individuals); *Haideri v. Jumei Int'l Holding Ltd.*, No. 20-CV-02751-EMC, 2020 WL 5291872, at \*5 (N.D. Cal. Sept. 4, 2020) (denying motion by movant group, citing "lack of involvement" and lack of information about "how they would cooperate and manage the litigation given their status as a group."); *Lako v. Loandepot, Inc.*, 8:21-cv-01449-JLS-JDE, 2022 WL 1314463, at \*6 (C.D. Cal. May 2, 2022) (denying motion where movant group "provided sparse information regarding the individual members of the group [and] recited only boilerplate assurances that its members would work together to oversee the litigation").

For the foregoing reasons, Westfall respectfully requests that the Court grant his motion in its entirety and deny the competing motions.

## II.     ARGUMENT

### A.     WESTFALL SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA creates a strong presumption that the Lead Plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  At this stage, the movant that has the largest financial interest need only make a *prima facie* showing that it satisfies the adequacy and typicality requirements of Rule 23.  *In re Cavanaugh*, 306 F.3d 726, 730-31 (9th Cir. 2002).  Once this presumption is triggered, it may be rebutted only upon proof that the presumptive Lead Plaintiff will not fairly represent the interests of the Class.  15 U.S.C. § 78u-4 (a)(3)(B)(iii)(II).  Here, the most adequate representative for the Class is Westfall.

#### 1.     Westfall Has the "Largest Financial Interest" in the Related Actions

The PSLRA requires the court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  While the PSLRA itself does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest," courts in this Judicial District recognize that the amount of financial loss is the most significant factor to be considered.  *See*, *e.g.*, *Nicolow*, 2013 WL 792642, at \*4 (emphasizing loss

4

in assessing financial interest).   Under the foregoing analysis, no eligible movant seeking appointment as lead plaintiff in the Related Actions has a larger financial interest in the litigation than Westfall.  As the chart at p. 2 illustrates, Westfall incurred a loss of $1,264,855 in connection with his Class Period purchases of Iovance securities, over $66,300 larger than the loss incurred by Farberov, Wei, and Pourhossein, the eligible competing movants with the next largest loss.

As discussed in detail *infra* at Section B, Merrill and Djie, the only other movant group who claim to have incurred a larger loss on their Class Period purchases of Iovance securities than Westfall, are inadequate within the meaning of Rule 23, and as such are disqualified from appointment as Lead Plaintiff.

### 2.     Westfall Otherwise Satisfies the Requirements of Rule 23

In addition to possessing the largest financial interest in the relief sought by the Class, Westfall has also made the requisite *prima facie* showing that he satisfies the typicality and adequacy requirements of Rule 23.  *See Cavanaugh*, 306 F.3d at 730-31.  First, Westfall's claims satisfy the typicality requirement of Rule 23(a)(3) because they are based on the same legal theory and arise from the same events and course of conduct as the Class's claims.  *See*, *e.g.*, *Vataj*, 2020 WL 532981, at *3.  Westfall, like all members of the Class, purchased Iovance securities during the Class Period at prices artificially inflated by Defendants' misrepresentations or omissions and was damaged upon the disclosure of those misrepresentations and/or omissions.  These shared claims, which are based on the same legal theory, and arise from the same events and course of conduct as the Class's claims, satisfy the requirements of Rule 23.  *Id.*   Second, Westfall satisfies the adequacy requirement of Rule 23(a)(4) because he has a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class.  *See*, *e.g.*, *TVIA, Inc.*, 2007 WL 1129344, at *4.   Westfall further demonstrated his adequacy by submitting, with his motion papers, a Declaration attesting to, *inter alia*, his understanding of the significance of his motion, the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, and his readiness to shoulder these responsibilities on behalf of the Class.  *See generally* Dkt. No. 46-6.

### B.     MERRILL AND DJIE'S MOTION SHOULD BE DENIED

Although Merrill and Djie claim to have incurred a larger loss than Westfall in connection with the Defendants' alleged malfeasance, they are inadequate within the meaning of Rule 23, which mandates denial of their motion irrespective of their financial interest in this litigation.

### 1.     Merrill and Djie's Papers Contain Disqualifying Errors

First, Merrill and Djie are inadequate within the meaning of Rule 23 because their papers contain disqualifying errors.  Specifically, the loss analysis submitted with Merrill and Djie's initial motion (the "Merrill and Djie Loss Analysis") asserted that they incurred investment losses of approximately $5,622,539.37.  *See* Dkt. No. 25-4 at *5.  However, Merrill and Djie's loss calculation improperly included six purchases of Iovance securities that Djie made on April 16, 2024, nearly one month prior to the start of the Class Period alleged in the *Farberov* Action—*i.e.*, May 9, 2024.  *See id. at* *3.  By including the losses Djie incurred in connection with these pre-Class Period purchases in their loss calculation, Merrill and Djie overstated their investment losses by approximately ***$422,800***.  *See*, *e.g.*, *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2011 WL 566814, at *5 (N.D. Cal. Feb. 15, 2011) (transactions before the class period are properly excluded from a calculation of losses because the plaintiff did not rely on the alleged misrepresentations in purchasing the security); *Brown v. China Integrated Energy, Inc.*, No. CV 11-02559 MMM (PLAx), 2011 U.S. Dist. LEXIS 151131, at *28-29 (C.D. Cal. Aug. 29, 2011) ("'Since sales matched with pre-class period purchases [] are not included in the calculation of class period losses, any gains or losses from those . . . sales would not be included in the total loss.'") (quoting *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 129 (S.D.N.Y. 2011)).

In addition, Merrill and Djie failed to disclose all of Djie's Class Period transactions in Iovance securities as required by the PSLRA.  The statute unequivocally requires that a lead plaintiff applicant submit a PSLRA certification that "sets forth ***all*** of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint" (15 U.S.C. § 78u-4(a)(2)(A)(iv)) (emphasis added).  Here, the Merrill and Djie Loss

Analysis indicates that Merrill executed seven sales of Iovance securities on June 3, 2024 "related to opening position." *See* Dkt. No. 25-4 at *4. However, the schedule of transactions appended to Merrill's PSLRA certification conspicuously excludes the foregoing sales (*see generally* Dkt. No. 25-2 at *4-5). The errors and inconsistencies in Merrill and Djie's submissions render them inadequate because they "str[i]k[e] at the core of the PSLRA's lead plaintiff inquiry: determining which movant holds the largest financial stake in the litigation." *Karp v. Diebold Nixdorf, Inc.*, No. 19 CIV. 6180(LAP), 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019), *adhered to on reconsideration*, No. 19 CIV. 6180 (LAP), 2019 WL 6619351 (S.D.N.Y. Dec. 5, 2019).

Westfall respectfully urges the Court not to treat these errors as minor or clerical. One week after filing their initial motion papers, Merrill and Djie filed a Notice of Errata restating their investment losses and correcting the foregoing errors. Dkt. No. 56. Merrill and Djie attempted to downplay the significance of the errors in their initial motion papers by stating that they "submit[ted] this notice of errata to their motion for lead plaintiff [. . .] to correct ***inadvertent errors by undersigned counsel's staff*** in preparing the loss chart [. . .] and the accompanying Schedule A to Mr. Djie's certification [. . .]." *See id.* (Emphasis added). Yet this litigation is a complex securities class action, and the Court-appointed Lead Plaintiff will be required to diligently review all significant filings and supervise the efforts of counsel. The presence of such obvious errors in their motion papers raises legitimate questions as to whether Merrill and Djie are prepared to do so. Moreover, even assuming that the mistakes were due to "inadvertent errors by undersigned counsel's staff," Djie signed his faulty Certification under penalty of perjury and should have reviewed the same prior to attesting to its accuracy. That he failed to do so raises serious concerns regarding his adequacy to serve as a responsible fiduciary in this matter.

Moreover, while the Notice of Errata corrected the errors previously discussed, it failed to correct another glaring error—namely, that Merrill and Djie incorrectly accounted for certain of Merrill's post-Class Period sales of Iovance securities. To properly account for post-Class Period sales in the calculation of an investor's financial interest, the investor must calculate the

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF ANTHONY WESTFALL FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 5:25-cv-04177-EKL; 5:25-cv-04199-EKL

profits the investor received from such sales by determining the sale's transaction amount—*i.e.*, the number of shares sold multiplied by the price of the shares. When performing this calculation, the PSLRA requires an investor to use the higher of the actual sale price and the average closing price from the start of the 90-day lookback period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market—in this case, on May 9, 2025. *See* 15 U.S.C. § 78u-4(e)(1). Here, on May 9, 2025, Merrill executed 13 sales of Iovance securities. *See* Dkt. No. 25-4 at *2-3. To properly account for these sales in calculating their financial interest in this litigation, then, Merrill and Djie were required to use the higher of (i) the actual sale price and (ii) $1.75 per share—*i.e.*, the closing price of Iovance securities on May 9, 2025 (the first day following the disclosure of the alleged fraud). However, for 12 of these sales, Merrill and Djie used prices ranging from $1.66–$1.74 per share, rather than the $1.75 per share price as required by the statutory methodology. *See id.* Similarly, on May 12, 2025, Merrill executed five sales of Iovance securities. *See id.* at *3. To properly account for these sales, Merrill and Djie were required to use the higher of the actual sale price and $1.84 per share—*i.e.*, the average closing price across the four days following the disclosure of the alleged fraud. However, for one of these sales, Merrill and Djie used a price of $1.82 per share. *See id.* As a result of these miscalculations, Merrill and Djie understated the amount of profits Merrill received from the foregoing sales, thereby overstating Merrill's investment losses by approximately $13,189.

Plainly, Merrill and Djie's errors are disqualifying. Courts routinely deny lead plaintiff motions on the basis of such errors, as they raise questions regarding the movant's fitness to supervise a complex securities class action. *See*, *e.g.*, *Qualcomm*, 2019 WL 277360, at *3-4 (significant errors in transactions records and loss calculations prohibit a movant from satisfying the adequacy and typicality requirements of Rule 23); *Tomaszewski*, 383 F. Supp. 3d at 414 (disqualifying movant with the largest loss when errors in sworn certification demonstrated a "substantial degree of carelessness and raise[d] doubt as to whether he will fairly and adequately

represent the best interests of the class"); *In re Vonage Initial Pub. Offering Secs. Litig.*, No. 07-177 (FLW), 2007 WL 2683636, at *7, *8 n.8 (D.N.J. Sept. 6, 2007) (denying motion by movant whose certification "contained incorrect trading data and loss calculations," finding it to be "plagued with misinformation"); *In re Boeing Co. Aircraft Sec. Litig.*, No. 19-cv-02394, 2020 WL 476658, at *5 (N.D. Ill. Jan. 28, 2020) (denying motion by movants where errors in loss calculations demonstrated that movants either knowingly submitted incorrect information or failed to review their submissions before filing).

### 2.   Merrill and Djie Are An Improper Group

Second, Merrill and Djie are also inadequate within the meaning of Rule 23 because they are a group of unrelated investors who appear to have been assembled by counsel purely to aggregate their financial interests in an effort to secure a leadership role in this litigation. Courts in the Ninth Circuit generally decline to appoint investor groups as co-lead plaintiffs when they consist of individuals "who had no pre-existing relationship with one another, and whose relationship and group status were forged only by [its] lawyer[s]." *In re Stitch Fix*, 393 F. Supp. 3d at 835 (N.D. Cal. 2019) (denying motion by artificial grouping of individuals); *Bodri v. GoPro, Inc.*, 16-cv-00232-JST, 2016 WL 1718217, at *4 (N.D. Cal. Apr. 28, 2016) ("[C]ourts have generally found that 'appointing a group of unrelated investors undercuts the primary purpose of the PSLRA: to eliminate lawyer-driven litigation.'"); *In re Silicon Storage Tech., Inc.*, No. C 05-0295 PJH, 2005 WL 8186824, at *9 (N.D. Cal. May 3, 2005) (finding plaintiff groups could not be "the most adequate plaintiffs" where the members were "unrelated to each other" until introduced by their lawyers).

Here, Merrill and Djie have failed to demonstrate to the Court at all that they understand the responsibilities of a Lead Plaintiff and are prepared to undertake them jointly. Their motion brief merely provides sparse biographical details (*see* Dkt. No. 24 at 8-9). Further, apart from their required PSLRA Certifications, their motion papers do not contain *any* attestations that they understand the responsibilities of a lead plaintiff and are ready to undertake those responsibilities on the Class's behalf. Heightening these concerns is that fact that, as a two-member investor

group, Merrill and Djie have told the Court ***nothing*** about how they intend to coordinate their efforts to prosecute the Related Actions jointly if appointed Co-Lead Plaintiffs, why they even chose to seek appointment as Co-Lead Plaintiffs, or how will they resolve any disagreements regarding litigation decisions. Troublingly, these basic questions remain unanswered. Courts generally decline to appoint movant groups who, like Merrill and Djie here, fail to demonstrate any degree of cohesiveness. *See*, *e.g.*, *Jumei*, 2020 WL 5291872, at \*5 (denying motion by movant group, citing "lack of involvement" and lack of information about "how they would cooperate and manage the litigation given their status as a group."); *Loandepot*, 2022 WL 1314463, at \*6 (denying motion where movant group "provided sparse information regarding the individual members of the group [and] recited only boilerplate assurances that its members would work together to oversee the litigation"). Indeed, courts generally only appoint groups that have submitted a joint declaration or otherwise demonstrated that its members understand the significance of moving jointly for appointment as lead plaintiffs. *See*, *e.g.*, *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204-PHXFJM, 2008 WL 942273, at \*3-5 (D. Ariz. Apr. 7, 2008) (finding that movant group that did not submit a joint declaration lacked cohesion and was inadequate under Rule 23); *Niederklein v. PCS Edventures!.com, Inc.*, No. 1:10-cv-00479-EJL-CWD., 2011 WL 759553, at \*6-8 (D. Idaho Feb. 24, 2011) (finding lead plaintiff movant group inadequate for "fail[ing] to present any evidence of cohesion, in either its materials in support of its motion or during the hearing, to justify its members' relationship as a group"). Moreover, the presence of glaring errors in Merrill and Djie's motion papers (as discussed *supra* at p. 6-8) only amplifies concerns about their ability to prosecute this litigation effectively and efficiently.

## III.    CONCLUSION

For the foregoing reasons, Westfall respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Westfall as Lead Plaintiff for the Class; and (3) approving Westfall's selection of Pomerantz as Lead Counsel for the Class.

Dated: July 28, 2025                                   Respectfully submitted,

POMERANTZ LLP

10

*/s/ Jennifer Pafiti*

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Lead Plaintiff Movant Anthony Westfall and Proposed Lead Counsel for the Class*

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF ANTHONY WESTFALL FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 5:25-cv-04177-EKL; 5:25-cv-04199-EKL

**PROOF OF SERVICE**

I hereby certify that on July 28, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

> */s/ Jennifer Pafiti*
> Jennifer Pafiti

12

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF ANTHONY WESTFALL FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 5:25-cv-04177-EKL; 5:25-cv-04199-EKL