POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Lead Plaintiff Movant
Anthony Westfall and Proposed Lead
Counsel for the Class*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| KARTHIK TRICHUR SUNDARAM, Individually and on Behalf of All Others Similarly Situated,<br><br>            Plaintiff,<br><br>       v.<br><br>IOVANCE BIOTHERAPEUTICS, INC., FREDERICK G. VOGT, JEAN-MARC BELLEMIN, IGOR P. BILINSKY, and DANIEL G. KIRBY,<br><br>            Defendants. | Case No.: 5:25-cv-04177-EKL<br><br>REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF ANTHONY WESTFALL FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL<br><br><u>CLASS ACTION</u><br><br>Date:  October 1, 2025<br>Time:  10:00 a.m.<br>Judge:  Hon. Eumi K. Lee<br>Courtroom:  7 – 4th Floor |
| DIMITRY FARBEROV, Individually and on Behalf of All Others Similarly Situated,<br><br>            Plaintiff,<br><br>       v.<br><br>IOVANCE BIOTHERAPEUTICS, INC., FREDERICK G. VOGT, JEAN-MARC BELLEMIN, and IGOR P. BILINSKY,<br><br>            Defendants. | Case No.: 5:25-cv-04199-EKL<br><br><u>CLASS ACTION</u> |

Movant Westfall[1] respectfully submits this memorandum of law in further support of his motion for appointment as Lead Plaintiff and approval of his selection of Pomerantz as Lead Counsel (Dkt. No. 46).[2]

## I.    PRELIMINARY STATEMENT

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class" *and* has made a *prima facie* showing of typicality and adequacy within the meaning of Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii).  This presumption can only be rebutted upon proof that the presumptive "most adequate plaintiff" is atypical or inadequate.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Here, the presumptive "most adequate plaintiff"—*i.e.*, the presumptive Lead Plaintiff—is Westfall, having incurred a loss of $1,264,855 in connection with his purchases of Iovance securities as a result of the Defendants' alleged malfeasance.  Westfall has also made the requisite *prima facie* showings that he is both adequate and typical under Rule 23.  With respect to his adequacy, Westfall has submitted a detailed Declaration providing the Court with biographical information about himself and attesting to, *inter alia*, his understanding of the significance of his motion, the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, and his readiness to shoulder these responsibilities on behalf of the Class.  *See generally* Dkt. No. 46-6.

---

[1] All capitalized terms herein are defined in the Westfall's moving or opposition briefs, unless otherwise indicated.  *See* Dkt. Nos. 46; 67.

[2] Initially, six other movants also filed competing motions seeking appointment as lead plaintiff: (i) Gary LoPiccolo ("LoPiccolo") (Dkt. No. 18); (ii) Thor Brevik and Elliot Resnick ("Brevik and Resnick") (Dkt. No. 28); (iii) Lee Schweizer, Michael A. Macchione, Ann Marie Macchione, Bradford J. Tierney, and Christopher J. Amoruso (collectively, the "Iova Investor Group") (Dkt. No. 30); (iv) Mark van den Broek ("van den Broek") (Dkt. No. 15); (v) Brian Paplaski ("Paplaski") (Dkt. No. 45); and (vi) Peter Jay Guthy ("Guthy") (Dkt. No. 21).  On July 18, 2025, LoPiccolo filed a statement of non-opposition to competing motions.  Dkt. No. 55.  On July 22, 2025, Brevik and Resnick filed a notice withdrawing their motion.  Dkt. No. 57.  On July 28, 2025, the Iova Investor Group, van den Broek, and Hasan each filed notices of non-opposition to competing motions (*see* Dkt. Nos. 63; 64; 71), Paplaski filed a response acknowledging that he does not possess the largest financial interest in this litigation (*see* Dkt. No. 65), and Guthy filed a notice withdrawing his motion (Dkt. No. 66).

1

One competing movant group—Farberov, Wei, and Pourhossein—make the cursory claim in their opposition brief that they possess a larger financial interest in this litigation than Westfall. Dkt. No. 70 at 3. Specifically, they state that "[w]hile Westfall claims a loss of $1,264,855 in his motion papers [], only $806,573 of that total is recoverable because Westfall sold most of his shares before the alleged corrective disclosure" and because "66,100 of those shares were purchased prior to the class period[.]" This argument fails for multiple reasons. First, Farberov, Wei, and Pourhossein's calculation wholly ignores the $165,800 in losses that Westfall incurred in connection with his transactions in Iovance options. *See* Dkt. No. 46-3. Second, their argument is based on an apparently erroneous reading of Westfall's loss analysis, given that Westfall ***has not claimed any investment losses whatsoever*** in connection with his pre-Class Period purchases of Iovance common stock. Accordingly, Westfall respectfully urges the Court to disregard Farberov, Wei, and Pourhossein's unsupported—and unsupportable—claim.

Finally, as discussed at length in Westfall's opposition brief (Dkt. No. 67), while the competing movant duo Merrill and Djie also claim to have incurred a larger loss than Westfall, they are ineligible for appointment because they are inadequate within the meaning of Rule 23. First, Merrill and Djie are inadequate because their motion papers contain disqualifying errors. Courts routinely deny lead plaintiff motions under such circumstances because they raise questions regarding the movant's fitness to supervise complex securities class actions. *See*, *e.g.*, *Camp v. Qualcomm Inc.*, 18-CV-1208-AJB-BLM, 2019 WL 277360, at *3-4 (S.D. Cal. Jan. 22, 2019) (significant errors in transactions records and loss calculations prohibit a movant from satisfying the adequacy and typicality requirements of Rule 23); *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 414 (E.D. Pa. 2019) (disqualifying movant with the largest loss when errors in sworn certification demonstrated a "substantial degree of carelessness and raise[d] doubt as to whether he will fairly and adequately represent the best interests of the class"). Second, Merrill and Djie are also inadequate because they are an improper movant group who provided only sparse information about themselves in their initial motion papers and who were cobbled together

by their attorneys for the sole purpose of securing the PSLRA's largest financial interest presumption. Courts in the Ninth Circuit generally decline to appoint investor groups as co-lead plaintiffs when they consist of individuals "who had no pre-existing relationship with one another, and whose relationship and group status were forged only by [its] lawyer[s]." *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 835 (N.D. Cal. 2019) (denying motion by artificial grouping of individuals); *Haideri v. Jumei Int'l Holding Ltd.*, No. 20-CV-02751-EMC, 2020 WL 5291872, at *5 (N.D. Cal. Sept. 4, 2020) (denying motion by movant group, citing "lack of involvement" and lack of information about "how they would cooperate and manage the litigation given their status as a group."); *Lako v. Loandepot, Inc.*, 8:21-cv-01449-JLS-JDE, 2022 WL 1314463, at *6 (C.D. Cal. May 2, 2022) (denying motion where movant group "provided sparse information regarding the individual members of the group [and] recited only boilerplate assurances that its members would work together to oversee the litigation").

For the foregoing reasons, Westfall respectfully requests that the Court grant his motion in its entirety and deny the competing motions.

## II.    ARGUMENT

### A.    WESTFALL SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA creates a strong presumption that the Lead Plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As discussed in his opposition brief (Dkt. No. 67), having incurred a loss of $1,264,855, Westfall has the greatest financial interest within the meaning of the PSLRA of any putative Class member eligible for appointment as Lead Plaintiff. *See Nicolow v. Hewlett Packard Co.*, Nos. 12-05980 CRB *et al.*, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) (emphasizing monetary loss in assessing financial interest). One competing movant duo, Merrill and Djie, claim to have incurred a larger loss than Westfall. However, Merrill and Djie fail to satisfy the adequacy requirements of Rule 23 and are therefore disqualified from consideration as Lead Plaintiff.

In addition, one other competing movant group, Farberov, Wei, and Pourhossein, make a cursory argument in their opposition brief that they incurred a larger loss than Westfall. Specifically, they argue that "[w]hile Westfall claims a loss of $1,264,855 in his motion papers [. . .], only $806,573 of that total is recoverable because Westfall sold most of his shares before the alleged corrective disclosure[,]" and because "Westfall purchased a total of 371,964 shares during the class period, but was holding only 159,189 of those shares by the time of the corrective disclosure [. . .] [h]is loss on his retained shares is just $806,573." Dkt. No. 70 at 3. In tallying Westfall's total retained shares, Farberov, Wei, and Pourhossein state that "Westfall held 225,289 shares at the end of the class period, but [] 66,100 of those shares were purchased prior to the class period; 225,289 minus 66,100 is 159,189 class period shares retained[.]" *Id.* This argument fails for multiple reasons.

First, Farberov, Wei, and Pourhossein's calculation is facially incorrect because it fails to account for Westfall's transactions in Iovance option contracts. As Farberov, Wei, and Pourhossein acknowledge in their moving brief, the Class in this litigation is defined as "all investors that purchased or otherwise acquired Iovance [] *securities*" during the Class Period. *See* Dkt. No. 35 at 2 (emphasis added). Accordingly, Westfall's losses on Iovance options are recoverable in this litigation and thus constitute part of his "financial interest in the relief sought by the class" within the meaning of the PSLRA. However, without any explanation, Farberov, Wei, and Pourhossein's calculation only accounts for Westfall's transactions in Iovance common stock, while ignoring the *$165,800* in losses Westfall incurred in connection with his transactions in Iovance options (*see* Dkt. No. 46-3), thereby significantly *understating* Westfall's total losses in this litigation. While the PSLRA itself does not provide any guidance concerning the method of calculating financial interest, courts must employ "'accounting methods that are [. . .] rationally [] applied.'" *Abadilla v. Precigen, Inc.*, No. 20-cv-06936-BLF, 2021 WL 1312746, at *2 (N.D. Cal. Apr. 08, 2021) (quoting *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002)). Here, there is

nothing "rational" about excluding Westfall's losses on Iovance options from his financial interest in this litigation.

Second, in the bare three sentences they devote to claiming a larger financial interest in this litigation than Westfall, Farberov, Wei, and Pourhossein have wholly failed to explain the basis for their calculation of Westfall's purported investment losses, making it entirely unclear how they even reached this loss figure. Farberov, Wei, and Pourhossein appear to argue that Westfall's claimed loss of $1,264,855 is overstated because 66,100 of the shares of Iovance stock that Westfall retained at the end of the Class Period were purchased prior to the Class Period. Dkt. No. 70 at 3. Farberov, Wei, and Pourhossein claim that by removing these shares from the analysis, Westfall's loss reduces to $806,573. *See id.* To the extent that their position can be discerned, it appears to rest upon an erroneous reading of Westfall's loss analysis. Specifically, while Westfall, at the end of the Class Period, did hold shares of Iovance stock that he purchased prior to the Class Period, ***Westfall has not claimed any investment losses in connection with these purchases***. Accordingly, unlike Merrill and Djie, who overstated their financial interest by claiming losses on Djie's pre-Class Period purchases of Iovance stock, Westfall losses were ***not*** overstated. *See* Declaration of Jennifer Pafiti, Esq. in Further Support of Motion, Exhibit A (showing that Westfall incurred losses of $1,264,855 in this litigation even when excluding pre-Class Period holdings from his total retained shares). Rather, Westfall correctly included all of the shares of Iovance stock he held at the end of the Class Period in tallying his total retained shares. He has not claimed to have purchased those shares at artificially inflated prices due to Defendants' fraud, nor has he claimed that losses incurred in connection with the purchase of those shares comprise any part of his recoverable losses in this litigation. Farberov, Wei, and Pourhossein's terse and incorrect argument provides no basis to reduce Westfall's loss, nor for Farberov, Wei, and Pourhossein to lay claim to presumptive Lead Plaintiff status in this Action.

In addition to possessing the largest financial interest in the relief sought by the Class, Westfall has also made the requisite *prima facie* showing that he satisfies the typicality and

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF ANTHONY WESTFALL FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL - 5:25-cv-04177-EKL; 5:25-cv-04199-EKL

adequacy requirements of Rule 23. *See Cavanaugh*, 306 F.3d at 730-31. Indeed, no competing movant has challenged Westfall's typicality or adequacy—nor could they. First, Westfall's claims satisfy the typicality requirement of Rule 23(a)(3) because they are based on the same legal theory and arise from the same events and course of conduct as the Class's claims. *See*, *e.g.*, *Vataj v. Johnson*, 19-CV-06996-HSG, 2020 WL 532981, at *3 (N.D. Cal. Feb. 3, 2020). Westfall, like all members of the Class, purchased Iovance securities during the Class Period at prices artificially inflated by Defendants' misrepresentations or omissions and was damaged upon the disclosure of those misrepresentations and/or omissions. These shared claims, which are based on the same legal theory, and arise from the same events and course of conduct as the Class's claims, satisfy the requirements of Rule 23. *Id.* Second, Westfall satisfies the adequacy requirement of Rule 23(a)(4) because he has a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class. *See*, *e.g.*, *Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007). Westfall further demonstrated his adequacy by submitting, with his motion papers, a Declaration attesting to, *inter alia*, his understanding of the significance of his motion, the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, and his readiness to shoulder these responsibilities on behalf of the Class. *See generally* Dkt. No. 46-6.

### B.    MERRILL AND DJIE'S MOTION SHOULD BE DENIED

Although Merrill and Djie claim to have incurred a larger loss than Westfall in connection with the Defendants' alleged malfeasance, as discussed at length in Westfall's opposition brief (Dkt. No. 67), they are inadequate within the meaning of Rule 23 because their papers contain disqualifying errors and because they are an improper movant group.

First, by improperly including pre-Class Period purchases of Iovance securities in the calculation of Djie's financial interest in this litigation, Merrill and Djie overstated their investment losses by approximately $422,800. *See* Dkt. No. 67 at 3, 6; *see also Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2011 WL 566814, at *5 (N.D. Cal. Feb. 15, 2011) (transactions before the class period are properly excluded from a calculation of losses

because the plaintiff did not rely on the alleged misrepresentations in purchasing the security); *Brown v. China Integrated Energy, Inc.*, No. CV 11-02559 MMM (PLAx), 2011 U.S. Dist. LEXIS 151131, at *28-29 (C.D. Cal. Aug. 29, 2011) ("'Since sales matched with pre-class period purchases [] are not included in the calculation of class period losses, any gains or losses from those . . . sales would not be included in the total loss.'") (quoting *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 129 (S.D.N.Y. 2011)).  In addition, Merrill and Djie failed to disclose all of Djie's Class Period transactions in Iovance securities in violation of the PSLRA's express requirement that a lead plaintiff applicant submit a PSLRA certification that "sets forth *all* of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint" (15 U.S.C. § 78u-4(a)(2)(A)(iv)) (emphasis added); *see also* Dkt. No. 67 at 3, 6-9.

In their opposition brief, Merrill and Dije state that "the error relating to Movants' opening papers" was a "clerical error on the part of counsel for Movants and not an error on the part of Mr. Djie," and is therefore "not relevant to evaluating adequacy under Rule 23 because 'minor or inadvertent mistakes made in a sworn certification do not strike at the heart of Rule 23's adequacy requirement.'" *See* Dkt. No. 68 at 8.  Merrill and Djie further argue that "the error was corrected promptly once discovered," citing the Notice of Errata that Merrill and Djie filed *one week* after filing their motion papers.  *See id*.  As an initial matter, Westfall respectfully urges the Court not to treat these errors as minor or clerical as the presence of such obvious errors in their motion papers raises legitimate questions as to whether Merrill and Djie are prepared to diligently review all significant filings and supervise the efforts of counsel.  Moreover, Merrill and Djie have thus far failed to correct an *additional error* in their motion papers: namely, that by incorrectly accounting for certain of Merrill's post-Class Period sales, Merrill and Djie overstated their investment losses by approximately $13,189.  *See* Dkt. No. 67 at 3, 7-8.  Courts routinely deny lead plaintiff motions under such circumstances because they raise questions regarding the movant's fitness to supervise complex securities class actions.  *See*, *e.g.*, *Qualcomm*, 2019 WL 277360, at *3-4 (significant errors in transactions records and loss calculations prohibit a movant

from satisfying the adequacy and typicality requirements of Rule 23); *Tomaszewski*, 383 F. Supp. 3d at 414 (disqualifying movant with the largest loss when errors in sworn certification demonstrated a "substantial degree of carelessness and raise[d] doubt as to whether he will fairly and adequately represent the best interests of the class").

Second, Merrill and Djie are also inadequate because they are an improper movant group who failed to timely demonstrate their preparedness to work cohesively if appointed to serve as Lead Plaintiffs.  As discussed in Westfall's opposition brief, apart from their required PSLRA Certifications, their initial motion papers did not contain *any* attestations that they understood the responsibilities of a lead plaintiff and were ready to undertake those responsibilities on the Class's behalf, and they told the Court *nothing* about how they intended to coordinate their efforts to prosecute the Related Actions jointly if appointed Co-Lead Plaintiffs, why they even chose to seek appointment as Co-Lead Plaintiffs, or how they would resolve any disagreements regarding litigation decisions.  *See* Dkt. No. 67 at 9-10.  It wasn't until Merrill and Djie filed their opposition brief—*two weeks after* filing their initial motion papers—did they submit a joint declaration.  *See* Dkt. 69-1.  Moreover, while the joint declaration states that they "have discussed the requirements and responsibilities of being a Lead Plaintiff in a securities class action governed by the PSLRA with each other and our counsel, including during a conference call we participated in with each other[,]" (*see id* ¶ 4) it is unclear whether Merrill and Djie spoke to each other prior to filing their initial motion papers.  Accordingly, Merrill and Djie's belated attempt to supplement their initial proffer only further demonstrates that the duo was hastily cobbled together by their attorneys for the sole purpose of securing the PSLRA's largest financial interest presumption and should be rejected as untimely.  *See*, *e.g.*, *Stires v. Eco Sci. Sols., Inc.*, No. CV 17-3707(RMB/KMW), 2018 WL 5784817, at *5 (D.N.J. Feb. 14, 2018) (determining that a group could not be counted on to monitor counsel in a sufficient manner because, *inter alia*, it filed its joint declaration after the lead plaintiff motion was filed); *In re Level 3 Commc'ns, Inc. Sec. Litig.*, No. 09-cv-00200-PAB, 2009 WL 10684924, at *4 (D. Colo. 2009) (questioning whether "it is proper to consider [such a] joint declaration" submitted after the initial motion).

The errors in Merrill and Djie's motion papers alone are sufficient to call into question the integrity of their entire submission to the Court and, taken together with their lack of cohesion, Merrill and Djie are disqualified from serving as fiduciaries and representatives on behalf of the Class.  Simply put, Rule 23's adequacy requirement mandates—and the Class deserves—a representative who is prepared to capably represent their interests in this litigation.  Respectfully, Merrill and Djie do not appear to be such representatives.

**III.   CONCLUSION**

For the foregoing reasons, Westfall respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Westfall as Lead Plaintiff for the Class; and (3) approving Westfall's selection of Pomerantz as Lead Counsel for the Class.

Dated: August 4, 2025                              Respectfully submitted,

                                                   POMERANTZ LLP

                                                   */s/ Jennifer Pafiti*
                                                   Jennifer Pafiti (SBN 282790)
                                                   1100 Glendon Avenue, 15th Floor
                                                   Los Angeles, California 90024
                                                   Telephone: (310) 405-7190
                                                   jpafiti@pomlaw.com

                                                   POMERANTZ LLP
                                                   Jeremy A. Lieberman
                                                   (*pro hac vice* application forthcoming)
                                                   J. Alexander Hood II
                                                   (*pro hac vice* application forthcoming)
                                                   600 Third Avenue, 20th Floor
                                                   New York, New York 10016
                                                   Telephone: (212) 661-1100
                                                   Facsimile: (917) 463-1044
                                                   jalieberman@pomlaw.com
                                                   ahood@pomlaw.com

                                                   *Counsel for Lead Plaintiff Movant Anthony*
                                                   *Westfall and Proposed Lead Counsel for the Class*

**<u>PROOF OF SERVICE</u>**

I hereby certify that on August 4, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

<u>*/s/ Jennifer Pafiti*</u>
Jennifer Pafiti

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF ANTHONY WESTFALL FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL - 5:25-cv-04177-EKL; 5:25-cv-04199-EKL